NORRIS v. DUNN.

Opinion delivered October 26, 1931.

512

*John D. Arbuckle,* for appellant.
*Hill, Fitzhugh & Brizzolara,* for appellee.

BUTLER, J. This is an action by the appellant, Capt. Fred H. Norris, to recover custody of a minor child, Thomas Clark Dunn, from his grandmother, Mrs. Mary Dunn, and involves the validity of an adoption proceeding in the County of Cochise in the State of Arizona. Capt. Norris is the stepfather of the minor, who at the time of the adoption proceedings, was approximately 9½ years old. His mother died on or about the 17th day of October, 1929, and at her request Capt. Norris attempted to adopt the child. The child had no relatives in the State of Arizona, but its grandmother, the appellee, and two uncles were residents of the city of Fort Smith, in this State.

Capt. Norris instituted adoption proceedings in the Arizona court, and on November 7, 1929, an order of adoption was made by that court granting the prayer of the petition for adoption. Some months after, while the child was on its way to school in the town of Douglas,

in Cochise County, Arizona, he was abducted by an uncle and taken to the home of his grandmother in the city of Fort Smith, Arkansas, where he now lives, and was living at the time of the filing of this suit by Norris.

On the trial of the case before the chancellor an exemplification of the record of all the proceedings in the Arizona court relative to the disposition of the person and estate of the minor child after the death of his mother was filed and oral testimony taken. The statutes of Arizona relating to the adoption of minors is found at §§ 117-124 of the Revised Code of Arizona adopted in 1928. Section 117 provides that minor children may be adopted by an adult person at least ten years older than the person adopted with the consent of the child if over fourteen years of age, subject to the rules thereafter prescribed in the statute.

Section 118 provides that the petition shall be filed in the superior court of the county in which the child resides, and that where the petitioner has a husband or wife it is necessary for said husband or wife to consent and join in the petition, and that the attorney of the county in which the child resides, "upon application of the person seeking such adoption, shall draw the petition therefor and act as attorney for such petitioner in all adoption proceedings, without expense to the petitioner. No fees shall be charged in adoption proceedings by the clerk of any court, sheriff or other public officer."

Section 119 is as follows: "The parents of the child, or the survivor of them, shall, except as herein provided, consent in writing to such adoption. If neither parent is living, the guardian of the child, or, if there is no guardian, the next of kin in this State may consent; or if there is no next of kin, the court may appoint some suitable person to act in the proceedings as next friend of the child to give or withhold such consent."

Section 120 provides for proceedings where either parent is insane or imprisoned.

Section 121 is as follows: "Upon the filing of the petition, the court shall fix a day for the hearing thereof.

If the parent, guardian or next of kin does not consent to the adoption of a child, a copy of the petition and of the order fixing the day of hearing shall be served on him as a summons in a civil action, if found in the State, and if not, by publication once a week for three successive weeks in such newspaper in the county as the court may direct, the last publication to be at least four weeks before the time appointed for the hearing. Like notice shall also be published when a child has no parent living, and no guardian or next of kin in this State. The court may order such further notice as it deems proper.''

The order for adoption made on November 7, 1929, is as follows: ''This matter having come on regularly for hearing, and, it appearing that said minor, Thomas Clark Dunn, is now present, and the consent of James Logie that petitioner adopt said minor child having been signed and filed herein; that said James Logie is the guardian of the person and estate of said minor child; that the father of said minor child, Thomas A. Dunn, died on or about the 16th day of July, 1926, and that the mother of said minor child, Bernice Dunn Norris, died on or about the 17th day of October, 1929; that said minor child is of the age of approximately nine years and six months; that said petitioner has filed herein an agreement with said minor child and with each person whose consent has been filed herein, that said minor child shall be adopted by said petitioner and treated in all respects as his own lawful child should be treated, including the right of support, protection and inheritance, and it appearing that such adoption will be for the best interests of said minor child; that said petitioner and said minor child and all persons whose consent is necessary, have each appeared herein and were examined as provided by law; that said petitioner resides in this county and that said petitioner desires that the said Thomas Clark Dunn shall take his family name and be known hereafter as Thomas Clark Dunn Norris.

''It is therefore adjudged that the petitioner, Fred H. Norris, adopt said minor child, and from this day

forward said minor child shall be treated by him in all respects as his own lawful child should be treated, including the right of support, protection and inheritance; that said petitioner and said minor child shall bear toward each other the relation of parent and child and that said minor child shall take the family name of said petitioner and be hereafter known as Thomas Clark Dunn Norris.''

The record of the Arizona court with reference to the appointment of James Logie as guardian discloses that James Logie filed his petition for guardianship of the person and estate of the minor in which he alleged that he was a citizen and resident of Douglas, Cochise County, Arizona; that he is not related in any way to the minor; that the minor had no lawful guardian and no relatives within the State of Arizona; that he was within the age of nine years and had an estate in Cochise and Pima counties, Arizona, which needed attention. This petition was duly sworn to, and an order made by the judge of the court on the 24th day of October appointing the 5th day of November, following, as the day for the hearing of the petition. The record shows that a notice was given by the clerk of the filing of the petition and of the date for the hearing by the court, which notice was dated October 24th, and on the 5th day of November, following, it is shown that the clerk made a certificate to the effect that he had published the notice on October 24th by posting copies thereof—one on the public bulletin board at the entrance of the county courthouse, one on the public bulletin board in the lobby of the United States postoffice in the city of Tombstone, and one on the public bulletin board at the entrance of the office of the clerk of the superior court, all in the aforesaid county and State. All of these preliminary proceedings appear to have been in strict conformity with the statutes of Arizona relating to the application and notice for letters of guardianship. On November 5th, the application came on for hearing, when the prayer of the petition was granted, and the court

ordered "that the said James Logie be, and is hereby appointed, guardian of the person and estate of the said minor, Thomas Clark Dunn, and that letters of guardianship of the person and estate of said minor be issued to him upon his giving bond to said minor in the penal sum of $1,000, and upon his taking and subscribing an oath according to law."

The next matter relating to the guardianship appearing in the exemplification of the record is the following:

"Bond

"Know All Men by These Presents:

"That we, James Logie, as principal, and the American Employers' Insurance Company, as surety are held and firmly bound unto Thomas Clark Dunn, in the sum of one thousand ($1,000) dollars, lawful money of the United States of America, to be paid to the said Thomas Clark Dunn, for which payment, well and truly to be made, we bind ourselves, our and each of our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"Signed and dated this 7th day of November, A. D. 1929.

"The condition of the above obligation is such that whereas, by an order of the superior court of Cochise County, State of Arizona, duly given, made and entered on the 5th day of November, A. D. 1929, the above bounded James Logie was appointed guardian of the person and estate of Thomas Clark Dunn, a minor, and letters of guardianship were directed to be issued to him upon his executing a bond according to law, in said sum of one thousand ($1,000) dollars.

"Now therefore, if the said James Logie as such guardian shall faithfully execute the duties of the trust according to law, then this obligation shall be void; otherwise to remain in full force and effect.

"This bond is herewith substituted for a bond made and executed on the 7th day of November, A. D. 1929,

and erroneously made to run to the State of Arizona instead of Thomas Clark Dunn.

> "James Logie,
> "American Employers' Insurance Co.
> > "By Everett J. Jones, its Agent and Attorney in Fact.
> "Arizona Southwest Bank, Agents,
> > "By Everett J. Jones, Manager.

"(Seal of American Employers' Insurance Co.)

"*Approved June 10, 1930.*

"Albert M. Sames, Judge of the Superior Court."

Following this, appear the letters of guardianship issued by the clerk on the 7th day of November, 1929, with the oath of James Logie appended thereto, made on the same date.

The statutes of Arizona relating to the appointment of guardians need not be set out here except that part of § 4110 of the Arizona Code relative to the bond of guardian, for it is conceded that the proceedings were in conformity with the statutes except in that particular. Section 4110, in so far as it relates to the bond of the guardian, and its necessity, is as follows: "Before the order appointing such person as guardian takes effect, and before letters issue, the court shall require of such person a bond to the minor, with sureties to be approved by the judge, and in such sum as he shall order, conditioned that the guardian will faithfully execute the duties of his trust according to law. * * * Upon the filing and approval of the bond, letters of guardianship shall issue to the person appointed."

The evidence adduced at the hearing was to the effect that Capt. Norris married the mother of the minor, and that they lived together until her death about thirteen months after the marriage; that shortly before her death she requested that Mr. Logie, the proprietor of a newspaper in Douglas, Arizona, for whom she had worked, should be appointed guardian of her son, and that her husband, Capt. Norris, adopt the child as his own son; that the proceedings relating to the guardianship

and adoption were to carry into effect her wishes. If the order of adoption were valid, he is entitled to the custody of said child.

The rule is well settled that the adoptive father is entitled to all the rights and privileges of a natural one, among which is usually included the custody of his child. 1 C. J. p. 1395. Of course, it is to be understood that the right of custody is not an absolute and indefeasible right, but must yield on occasion to the paramount interest of the child.

■ It is insisted, however, that there was no legal adoption of the child by Capt. Norris in Arizona, but, as this is a collateral attack on the validity of the adoption, the order cannot be ignored because of the mere irregularities in its procurement, but to avoid its effect it must appear that the court had no jurisdiction to render it and the order is not voidable, but void. Is it void?

The jurisdiction of the court to make the order is wholly derived from the authority conferred upon it by the statutes, and, in the absence of decisions of the court of Arizona, we apply to the proceedings, the general principles of law, and the decisions of our own court construing similar statutes.

In *Morris* v. *Dooley,* 59 Ark. 483-486, 28 S. W. 30, 430, the court said: "The proceeding to adopt a child as an heir was unknown to the common law, and in this State exists only as a special statutory proceeding. * * * Mr. Black in his work on Judgments, says: 'It is well settled that a judgment in a summary proceeding must show upon its face everything that is necessary to sustain the jurisdiction of the court rendering it.' Section 280. The rule seems to be, especially in this State, as settled by this court in *Hindman* v. *O'Connor,* 54 Ark. 643, 16 S. W. 1052, that 'where the jurisdiction is conferred on a court by special statute, and which is to be exercised in a special, and often summary, manner, the judgment can only be supported by a record which shows jurisdiction, and no presumptions as to its jurisdiction will be indulged. (Citing cases).

"But it is contended that only those facts which the statute requires to be set out in the petition need to be made to appear in the record; but we hold, on the contrary, that in a. proceeding of this kind, under 'a special statute, and not according to the course of the common law, the court in which the proceeding is had, *quoad hoc*, must be considered as an inferior court and that, unless all jurisdictional facts appear in the record itself, the judgment in the proceeding will be void upon collateral attack."

The rule announced in the above case has been adhered to and followed in all subsequent decisions of this court, and was restated in the recent case of *Minetree* v. *Minetree*, 181 Ark. 111, 26 S. W. (2d) 1011.

It was essential to the validity of the order of adoption that the person legally authorized by law appear and give consent to the granting of such order. *Willis* v. *Bell*, 86 Ark. 473-78, 111 S. W. 808; In re *Gallegos*, 21 Ariz. 250, 187 Pac. 573. The jurisdiction of the court where the proceeding is had under § 119 of the Code, as in this case, depends upon the consent of that person authorized by law or the court to represent the minor. *Willis* v. *Bell*, 86 Ark. 473, 111 S. W. 808, quoting from page 478: "The jurisdiction of the court depends upon the express consent of the parents of the child unless their residence be shown to be unknown." In this case both parents of the child were dead, and the consent to the proceedings was given by one who claimed authority as guardian. His right to so appear is challenged. The question then is: "Was he the legally appointed guardian with authority to consent for the child under the laws of the State of Arizona?" It will be observed that the Arizona statute relating to the appointment of guardian, like our own (§§ 5013 and 5015, Crawford & Moses' Digest) makes the giving of a bond a condition precedent to the issuance of letters of guardianship and authority to act as guardian. Section 4110, Arizona Code.

We have held that the condition of the statute is imperative, and that there can be no appointment of a

guardian and authority for him to act until the bond required has been given. *Guynn* v. *McCauley*, 32 Ark. 97; *Bank of Rector* v. *Parrish*, 131 Ark. 216, 198 S. W. 689. "Where the statute requires a guardian to give bond for the faithful performance of his duties as part of his qualification, he cannot qualify as guardian without giving such bond, nor can he act as guardian or take possession of, and control, the property of his ward unless he has complied with this condition precedent." 28 C. J. 1090.

The controlling question in this case then is: "Was the alleged guardian who assumed the right to consent to the adoption proceeding, legally constituted such with authority to enter consent?" As we have said, we look to the entire record in order to determine whether the bond was given before Logie assumed to act as guardian. The bond, which is shown in the exemplification of the record, was approved in June, 1930, long after the adoption proceedings, and, while it contains the recital that it is given in substitution of another bond filed November 7, 1929, the date of the adoption proceedings, that original bond is not accounted for either by an exemplification of it, or of any order of the court or judge in which reference to it is made. The recital in the bond approved June, 1930, to the effect that it was in substitution of a bond executed on November 7, 1929, and erroneously made to run to the State of Arizona instead of Thomas Clark Dunn, is inconsistent with the record as exemplified, for, as we have seen, the record is silent regarding the execution of a bond. As this was a special proceeding, having its authority only in the statute, that statute must be strictly followed, and this must affirmatively appear from the whole record. It is our conclusion that the record fails to disclose a guardian lawfully authorized to give consent, and, "until consent is obtained or personal or constructive service of the adoption proceeding is had or waived by personal appearance, the court is without power to make any order for the disposition of the child." In re *Gallegos, supra.*

We are of the opinion that the order of adoption under which Capt. Norris claims the custody of the child is void, and the court might award the custody of such child to that one who is best fitted to care for it. The record shows that Mrs. Mary Dunn is the child's grandmother, and while there is some suggestion by counsel that she is a woman of advanced age and in feeble health, that is a mere assumption, for the evidence wholly fails to disclose such state of facts. It does, however, show that she is a woman of splendid reputation and fitted by nature and experience to care for the child, and that she has ample means to rear and educate it. Capt. Norris, on the other hand, has no family or settled home; he is suffering from a disease which has caused his retirement from active service, and although a gentleman of high character, from the very nature of things he cannot give the child the same advantages and care that it would have in the home of its grandmother. It follows that the finding of the chancellor is correct, and the decree is therefore affirmed.

Justices SMITH, MEHAFFY and KIRBY dissent.