PAUL WALTER v. SUE WALTER HOLMAN

4652                                    431 S.W. 2d 468

Opinion Delivered September 16, 1968

174

*Eugene Coffelt* for appellant.

*Little, Enfield & Lawrence* for appellee.

J. FRED JONES, Justice. The appellant father and appellee mother were divorced by decree of the Benton County Chancery Court on December 29, 1960, and the custody of their two year old daughter was awarded to the appellee. This appeal is from a subsequent order of the court modifying its original decree as to child support and visitation rights previously awarded.

Under the original decree in 1960, appellant was ordered to pay $60.00 per month for the support of the child and he was awarded the right to visit the child at all reasonable times. On October 4, 1962, the decree was modified on motion of the appellant, and in addition to visitation rights at all reasonable times, he was awarded custody of the child in the home of his mother for three hours from 2:00 p.m. to 5:00 p.m. on one day each week.

The award for child support was subsequently reduced to $45.00 per month and on December 8, 1966, at a hearing on a contempt citation, the court found that appellant was not guilty of contempt but that he was delinquent in the amount of $500.00 for child support prior to October, 1962, as well as for all the calendar years 1965 and 1966. Appellant was ordered to pay the $500.00 delinquency which had accrued prior to 1962,

but he was relieved of the payments due for the calendar year 1965 and the first eight months of 1966. He was ordered to make the payments for the last four months of 1966. In December, 1966, appellant paid $90.00 and in January, 1967, he paid $90.00, but apparently has made no further payments. The appellee had remarried, and on February 4, 1967, she and the child moved with her present husband to Denver, Colorado where he is stationed in the air force.

On February 17, 1967, the appellant, who still lives in Benton County, filed a motion alleging, as the only change in the condition of the parties, that he had paid child support through December, 1967, and that since that time he had been denied visitation rights with his child; that the appellee had removed the child from the jurisdiction of the court, and from the state of Arkansas, thereby depriving him of his rights of visitation awarded in the original decree. Appellant prayed that he be relieved of monthly payments for child support until the child is returned to the jurisdiction of the court. The appellee responded to the motion and following a hearing on January 18, 1968, the chancellor modified the original decree by the order appealed from which is designated "Modification of Decree."

Under the order appealed from, the appellee was ordered to return the child to Benton County for visits with the appellant for one week during Easter vacation, one week during summer vacation, and for one week during Christmas vacation. The appellant was ordered to continue support payments at $45.00 per month, and judgment was entered against him for the $500.00 delinquent child support payments which had accrued prior to October, 1962, and also for $585.00 representing delinquent payments for thirteen months from December 8, 1966, through January 8, 1968.

Under the argument in appellant's brief, he states the substance of his contention as follows:

"The appellee has admitted that the child is in Colorado and the appellant takes the position that it would not be fair or equitable to give to the appellee a judgment for $585.00 for the time the child has been in Colorado and the appellant being deprived of his rights under the order of the court.

"The appellant takes a further view that he should be relieved of future payments until the child is returned to Benton County, Arkansas."

In support of his argument appellant cites the case of *Antonacci* v. *Antonacci,* 222 Ark. 881, 263 S.W. 2d 484. That case is very similar in many respects to the case at bar, but sustains the chancellor's order rather than appellant's contention. In the *Antonacci* case, the appellant worked for a railroad company in Arkansas and his former wife took their child to California. In affirming the decree of the chancellor in the *Antonacci* case, this court said:

"In addition to the fact that appellant can get a pass to travel by train to California, the court reduced the maintenance payments by half and refused to give the appellee judgment for $500 for unpaid installments of maintenance. All of this will enable the appellant to visit the child in California without any extraordinary expense to himself.

"Appellee has a job that she can go to in California where she earns from $65 to $70 per week, whereas here in Arkansas she can only earn about $32.50 per week. Appellee much prefers to live in California; she is happy there and appears to take good care of the child. We do not think the Chancellor erred in refusing to require appellee to remain somewhat a prisoner in Arkansas because of the unfortunate divorce proceeding.

"No doubt in refusing to allow the appellee judgment for $500 for unpaid installments of

maintenance the court took into consideration the fact that permission was given for the child to be taken out of the state and there might be some expense to appellant in the event he wished to visit the child in California.''

The appellant, in the case at bar, is a truck driver. He works regularly and his work occasionally takes him through Denver, Colorado where his former wife lives. She has not refused him visitation rights in Denver, and he has made no effort to see his child when in Denver giving as his only excuse in failure to do so, that it would cause him to be late with his load. A parent having custody of a child is ordinarily entitled to move to another state and take the child with her. *Ising* v. *Ward*, 231 Ark. 767, 332 S.W. 2d 495. The appellee, in the case at bar, was not restricted to territorial limits in the custody awarded her in the original decree, but she was ordered to return the child to Arkansas for one week visits three times each year, and there is no evidence in the record that she will not comply with that order.

At some stage of the proceedings the chancellor reduced the child support payments from $60.00 per month to $45.00. At the end of the first year following the divorce, appellant was delinquent in payments of child support in the amount of $500.00. The support payments for the calendar years 1962, 1963 and 1964 are not mentioned in the record, but appellant was totally delinquent for the calendar years 1965 and 1966. The record indicates that the appellant has paid nothing toward the support of his child since 1964 except a $90.00 payment in December, 1966, and $90.00 in January, 1967. The chancellor relieved the appellant from the payment of twenty of these delinquent monthly payments, amounting to $900.00, before the appellee remarried and moved to Denver, and the appellant has never paid any of the delinquencies as ordered by the court except the two $90.00 payments.

Appellee's mother lives in Benton County and appellee and the child visited there in August, 1967. They attempted to advise appellant of the impending visit by mail. Appellant left Benton County with his mother in July, 1967 for a visit in Canada. He did not return until September and did not advise the child he was going. Although he drove his Cadillac automobile to Canada and back through Wyoming, Oklahoma and then to New Orleans via Rogers in Benton County, he denies that he passed through Denver or made any effort to do so or to see his child at all during this extended vacation trip.

We recognize that all of the record in the entire divorce proceedings is not before us on this appeal, and properly so, but from the record that is before us, it would appear that appellant has paid nothing toward the support of his child for more than half the period of time that has elapsed since the divorce was granted. The record indicates no effort, whatever, on appellant's part to visit his child or arrange for her visit with him, and it would appear that appellant is more concerned about the child support than about his visitation rights.

It is a matter of common knowledge that at least one parent must necessarily forfeit some individual rights to the constant companionship of minor children when a divorce decree is granted. In defining and enforcing the rights and obligations of the parties to a divorce action, especially where minor children are concerned, much must be left to the sound discretion of the chancellor under the facts and circumstances of the case before him. Although this court tries equity cases de novo on appeal, we do not disturb a chancellor's order or decree unless it is clearly against the preponderance of the evidence, or unless the chancellor has abused his discretion.

We held that the chancellor did not abuse his discretion in the *Antonacci* case, supra, relied on by the

appellant and we hold that the chancellor did not abuse his discretion in the case at bar.

Affirmed.