Doyle WATKINS et ux *v.* Rickey Eugene DUDGEON

CA 80-171                                       606 S.W. 2d 78
Court of Appeals of Arkansas
Opinion delivered October 1, 1980

518

*Charles A. Yeargan* and *William G. Wright* and *Don P. Chancey*, for appellants.

No brief for appellee.

JAMES H. PILKINTON, Judge. This is an adoption case. Appellee is the father of Russell Eugene Dudgeon, the minor child involved. Appellants are not related to the child by blood but have cared for Russell practically all of his life. Appellants filed this suit in an effort to adopt the child, and the father has resisted. The probate court found that although appellants were certainly good parents and qualified to rear the child, the father was also a fit and proper person to have custody. On the theory that the law favors custody being awarded to a natural parent, appellants' petition was dismissed. They have appealed from the judgment of the probate court dismissing their petition for adoption.

The child involved here was born on May 9, 1976. Appellants were next door neighbors and helped to take care of the little boy, often on a full-time basis, from the time he was four weeks old. On December 9, 1976, when the child was only seven months old, appellants moved from Dallas, Texas, to Bonnerdale, in Garland County, Arkansas; and, with the written consent of the father and the oral agreement of the mother, took the child with them. The evidence shows that the natural parents were having domestic and financial difficulties at the time and could not care for the child.

On January 31, 1977, custody of Russell was returned to appellee and his wife. Appellants were told that the parents

had reconciled their differences and were to resume living together in Dallas. As things worked out, a reconciliation did not occur. The child actually lived exclusively with the mother in a one-room apartment in Dallas until April 16, 1977. During this period appellee would visit with his son occasionally while the mother had the child. On April 16, 1977, the mother once again returned the child to the home of the appellants. On August 9, 1977, appellee visited briefly with the child at the home of the appellants in Arkansas. The record reflects that the father did not contribute to the support of the child at any time while his son was in the custody of the appellants.

On February 9, 1978, appellants filed a petition to adopt the child with the written consent of the natural mother attached, and on April 17, 1978, the first hearing was held with the appellee appearing and objecting to the adoption. The probate judge ordered home studies by the social services agencies of Arkansas and Texas. After these reports were obtained upon the appellants and appellee, a subsequent hearing was held on April 3, 1979. No decision was reached, as additional home studies and psychological evaluations were ordered to be performed. After the last home study reports were received, final judgment was entered on September 21, 1979.

Appellants first contend that the consent of the natural father was not required in this case as the father had, for the period of at least one year, failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law. The appellee admitted at the hearing that he had failed to financially contribute to the support of the minor child; that he had only minimal contact with the child during the little boy's entire life; and that the little boy had lived with appellants practically all of his life.

The revised Uniform Adoption Act, Ark. Stat. Ann. § 56-201, et seq., (Supp. 1979), provides at § 56-206:

(a) Unless consent is not required under Section 7 [§ 56-207], a petition to adopt a minor may be granted only if

written consent to a particular adoption has been executed by:

(1) . . .

(2) Father of the minor, if the father was married to the mother at the time the minor was conceived or any time thereafter, . . .

Under § 56-207 consent to adopt is not required of a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause (i) to communicate with the child, or (ii) to provide care and support of the child as required by law or judicial decree.

It is settled law that statutory provisions involving the adoption of minors are strictly construed and applied. *Woodson* v. *Lee*, 221 Ark. 517, 254 S.W. 2d 326 (1953); *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W. 2d 840 (Ark. App. 1980). It is also true that the conduct of a parent who has failed significantly without justifiable cause to communicate with his child or provide for the support of a child as required by law, must be willful in the sense of being voluntary and intentional. It must appear that the parent acted arbitrarily and without just cause or adequate excuses. *Roberts* v. *Swim, supra; Pender* v. *McKee*, 266 Ark. 18, 582 S.W. 2d 929 (1979); *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W. 2d 176 (1979). However, this father has *failed significantly* for a period of one year to support his child *without justifiable cause*. The evidence is sufficient when tested by the "clear and convincing rule" now effective in such cases to show that he has so failed. *Pender* v. *McKee, supra; Harper* v. *Caskin, supra.* That fact does not preclude him from objecting to this proposed adoption, or from being fully heard in the matter. It means that he cannot defeat the adoption by simply withholding his consent. The law requiring a father to support his minor child has been declared by statute. Ark. Stat. Ann. § 57-633 (Repl. 1971). It was also appellee's legal obligation, independent of any court order or statute, to support his small son. *Brown* v. *Brown*, 233 Ark. 422, 345 S.W. 2d 27 (1961); *McCall* v. *McCall*, 205 Ark. 1123,

172 S.W. 2d 677 (1943). This he failed to do, and Ark. Stat. Ann. § 56-207 applies.

The phrase "failed significantly" for a period of one year to support his child or to communicate with him "without justifiable cause" certainly does not mean "failed totally", although this father did fail totally to support his minor son. As pointed out in *Pender* v. *McKee, supra*, it only means that the failure to support or communicate must be significant as contrasted with an insignificant failure. Without reviewing all of the testimony in detail, the record contains sufficient facts, many of which are uncontroverted, to establish by clear and convincing evidence that this father has forfeited his right, otherwise available to him as a natural parent, to withhold consent to this adoption. The obvious purpose of the applicable statute is to provide a child with a real father instead of one who, by his conduct, has proven to be a father by blood only. Although the legislature cannot force a man to be a father within the proper meaning of that term, it can and has afforded a judicial method whereby a child may have an opportunity to experience the benefits of having a real father by adoption. Our statute permits the courts, where the proper circumstances present themselves, to grant a petition for adoption to petitioners who demonstrate true love, affection and care for a child, regardless of the arbitrary dissent by a natural father. *Pender* v. *McKee, supra; Brown* v. *Fleming*, 266 Ark. 814, 586 S.W. 2d 8 (1979).

Like the court below, we recognize the heavy burden which the law places upon one wishing to adopt a child against the consent of a parent. *Roberts* v. *Swim, supra*. We also recognize that other things being equal the law favors natural parents over others in custody cases. However, the rights of parents are not proprietary and are subject to their correlated duty to care for and protect the child; and the law secures the preferential rights of parents only so long as they discharge their obligations. Parental rights are not to be enforced to the detriment or destruction of the happiness and well being of the child. *Pender* v. *McKee, supra*.

Upon a careful review of the record as a whole, we are convinced that the judgment of the probate court is clearly

522

erroneous (clearly against the preponderance of the evidence). Rule 52, Ark. Rules of Civil Procedure. While the father's situation did improve somewhat during the period this case was pending (due to his remarriage and his discontinuation of some undesirable traits), a clear preponderance of all of the evidence shows that the two homes and other factors having a bearing on the welfare of the child are *not* equal. We hold that the court erred in refusing to grant the adoption, and in returning the child to the father. As already pointed out, appellee's consent to the adoption was not required under the circumstances; and the record clearly shows that *the welfare of the child will best be served by granting the adoption.* This determination is consistent with the facts of the case, and does not deprive the father of any rights he has not heretofore by his conduct or neglect voluntarily surrendered or waived.

Reversed and remanded with instructions to grant the petition for adoption.